*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 17-CV-301

ANDREW JOHNSON, APPELLANT,

V.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAP-1551-16)

(Hon. Jennifer A. Di Toro, Trial Judge)

(Argued June 18, 2018                    Decided August 9, 2018)

*Andrew Johnson*, pro se.

*Richard S. Love*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Todd S. Kim*, Solicitor General at the time the initial brief was filed, and *Stacy L. Anderson*, Acting Deputy Solicitor General, were on the briefs, for appellee.

*David Carpman*, with whom *Jonathan H. Levy* was on the brief, for The Legal Aid Society of the District of Columbia, *amicus curiae* in support of appellant.

Before EASTERLY and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge*.

MCLEESE, *Associate Judge*:    Appellant Andrew Johnson challenges the

Superior Court's decision that the District of Columbia Office of Employee

Appeals (OEA) lacks jurisdiction to hear Mr. Johnson's wrongful-termination claim. We conclude that OEA has jurisdiction to hear Mr. Johnson's wrongful-termination claim.

**I.**

The following evidence was presented to OEA. Mr. Johnson was a school psychologist for the District of Columbia Public Schools (DCPS). He received a notice of termination, effective August 12, 2011, because he received a low performance rating for two consecutive years. In September 2011, Mr. Johnson appealed his termination to OEA. Mr. Johnson's financial situation worsened while his OEA appeal was pending. Mr. Johnson therefore met with employees of the DCPS Office of Human Resources (OHR) to discuss obtaining retirement benefits. He told the employees that he still wished to pursue his appeal before OEA and ultimately to return to work at DCPS, but sought access to his retirement funds because of his financial situation. When Mr. Johnson was provided a retirement application, he asked how he should fill out the application. In response, an OHR employee wrote "involuntary" on the application. The application listed an effective retirement date of August 12, 2011. Mr. Johnson

was not told that he could lose his ability to appeal his termination if he filed for retirement benefits.

Mr. Johnson began to receive annuity payments labeled "involuntary retirement benefits" pursuant to the District of Columbia Teachers' Retirement Plan (Plan), retroactive to his separation date. Under the Plan, former DCPS teachers can qualify for two separate categories of "retirement benefit[s]": "voluntary retirement benefit[s]" and "involuntary retirement benefit[s]." The Plan states that involuntary-retirement benefits "may be payable if [an otherwise eligible employee] is involuntarily separated from service (unless the reason is for cause on charges of misconduct or delinquency)." *See generally* D.C. Code § 38-2021.03 (b)(1) (2018 Cum. Supp.) (providing for benefits to employees who have been "involuntarily separated from the service," meet certain age and length-of-service requirements, and were not "remov[ed] for cause on charges of misconduct or delinquency").

An OEA ALJ concluded that OEA lacked jurisdiction to reach the merits of Mr. Johnson's wrongful-termination claim, because Mr. Johnson had voluntarily retired. In rejecting the contention that Mr. Johnson's retirement was involuntary, the ALJ concluded that Mr. Johnson had not proven that DCPS coerced or misled

him. The ALJ also concluded that Mr. Johnson's retirement was not rendered involuntary by the facts that (1) an OHR employee wrote "involuntary" on Mr. Johnson's retirement application; (2) Mr. Johnson applied for retirement benefits because he was facing financial difficulties; and (3) DCPS failed to tell Mr. Johnson that acceptance of retirement benefits would foreclose a challenge to his termination. The OEA Board and the Superior Court both affirmed, essentially for the reasons stated by the ALJ.

## II.

This court "reviews agency decisions on appeal from the Superior Court the same way we review administrative appeals that come to us directly." *Stevens v. District of Columbia Dep't of Health*, 150 A.3d 307, 311-12 (D.C. 2016) (brackets and internal quotation marks omitted). "Although this court generally resolves legal questions de novo, the court ordinarily accords deference to an agency's interpretation of a statute that the agency administers, unless the interpretation is unreasonable or is inconsistent with the statutory language or purpose." *Johnson v. District of Columbia Dep't of Emp't Servs.*, 167 A.3d 1237, 1240 (D.C. 2017) (internal quotation marks omitted).

OEA has jurisdiction to decide appeals from certain final agency decisions that "result[] in removal of [an] employee." D.C. Code § 1-606.03 (a) (2016 Repl.). It is well settled, however, that if an employee voluntarily retires, either in lieu of termination or retroactively after termination, the employee can no longer contest removal. *Bagenstose v. District of Columbia Office of Emp. Appeals*, 888 A.2d 1155, 1156-58 (D.C. 2005); *see also Williams v. District of Columbia Pub. Sch.*, OEA Matter No. 2401-0124-10-R13, at 3 (Apr. 22, 2014) ("OEA has consistently held that it lacks jurisdiction to adjudicate a voluntary retirement."). That makes sense, because if an employee has elected to voluntarily retire, then the employee cannot be said to have been aggrieved by an agency decision that resulted "in removal of the employee." D.C. Code § 1-606.03 (a). Conversely, if the employee can show that the retirement was the result of coercion or agency misrepresentation, the retirement is rendered involuntary and is treated as a constructive termination reviewable by OEA. *Bagenstose*, 888 A.2d at 1158.

**III.**

Mr. Johnson argues that he did not voluntarily retire and that OEA therefore has jurisdiction over his challenge to his termination. We agree.

It is undisputed that Mr. Johnson has been receiving benefits pursuant to D.C. Code § 38-2021.03 (b)(1), which provides for benefits to employees who have been "involuntarily separated from the service." By its terms, that statute could not properly apply to Mr. Johnson if he voluntarily ended his service with the District of Columbia. Provision of such benefits thus contradicts, rather than supports, a conclusion that Mr. Johnson voluntarily retired. Mr. Johnson's representations as to his interactions with OHR employees, including the notation on the retirement form that the retirement was involuntary, also undermine rather than support a conclusion that Mr. Johnson voluntarily retired. In our view, the record indisputably establishes that Mr. Johnson did not voluntarily retire. Rather, he was involuntarily separated and was granted benefits accordingly. We are not persuaded by DCPS's arguments to the contrary.

First, DCPS accurately points out that, in arguing that he did not voluntarily retire, Mr. Johnson did not rely on D.C. Code § 38-2021.03 (b)(1), which was first brought to our attention by The Legal Aid Society as amicus curiae. We do not, however, view Mr. Johnson as being precluded from reliance on that provision to support his clearly articulated contention that he did not voluntarily retire. *Cf., e.g.*, *In re D.L.*, 904 A.2d 367, 369 n.2 (D.C. 2006) ("Although counsel did not cite a particular statute that the judge's proposed order would violate, the objection was

sufficient to preserve the claim that in effectively closing the case, the judge was exceeding his statutory authority."); *Baker v. United States*, 867 A.2d 988, 1001 (D.C. 2005) ("[C]itation to a particular case is not a prerequisite to the preservation of an objection for appellate review . . . ."). *See generally, e.g.*, *Panutat, LLC v. District of Columbia Alcoholic Beverage Control Bd.*, 75 A.3d 269, 273 n.5 (D.C. 2013) ("[P]arties on appeal are not limited to the precise arguments they made previously . . . .") (citing *Yee v. City of Escondido*, 503 U.S. 519, 535 (1992)).

Second, DCPS contends that former employees who have been involuntarily separated must agree to forego any challenge to the separation in order to collect benefits under § 38-2021.03 (b)(1).  We disagree, because neither of the provisions at issue supports DCPS's argument.  OEA's jurisdiction to hear a termination appeal turns on whether an employee was "remov[ed]."  D.C. Code § 1-606.03 (a).  Nothing in this provision suggests that OEA jurisdiction is defeated by the receipt of involuntary-retirement benefits under § 38-2021.03 (b)(1).  Moreover, as we have previously explained, the language of § 38-2021.03 (b)(1) requires that Mr. Johnson have been involuntarily separated, and thus contradicts DCPS's contention that benefits under that provision are only available to those who agree to voluntarily separate from service as a District employee.

Third, DCPS relies on *Bagenstose*, 888 A.2d at 1157-58. We do not view *Bagenstose* as contrary to our holding, however, because *Bagenstose* did not address the question we decide: whether acceptance of involuntary-retirement benefits under § 38-2021.03 (b)(1) constitutes voluntary retirement divesting OEA of jurisdiction to hear a termination appeal.

Finally, DCPS argues that accepting involuntary-retirement benefits under § 38-2021.03 (b)(1) must be understood to preclude a challenge to termination, because there is no statutory mechanism for DCPS to recover benefits awarded to an employee who successfully challenges termination and thereafter is reinstated. We express no view as to whether such recovery would be warranted and if so how it could permissibly be achieved. Rather, we note that if such recovery would be warranted, we are confident that it could feasibly be achieved. We also note that the issue of recovering retirement benefits awarded before reinstatement will arise however we resolve the current appeal, given the undisputed principle that employees who involuntarily retire due to coercion or misrepresentation by the employer are not barred from challenging their termination. In such cases, an involuntary retiree may well have accepted retirement benefits before demonstrating a right to reinstatement.

For the foregoing reasons, we vacate the judgment and remand the case to the Superior Court for further remand to OEA.

*So ordered.*